UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROBERT BLEDSOE, | ) |
| | ) |
| Plaintiff, | )  Jury Demanded |
| | ) |
| v. | )  Case No. _____ |
| | ) |
| TENNESSEE VALLEY AUTHORITY | ) |
| BOARD OF DIRECTORS, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff sues Defendant and shows the Court as follows:

### I.  JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §2000e-5, 42 U.S.C. §2000e-16, 29 U.S.C. §633a(c), and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by the Rehabilitation Act, 29 U.S.C. §791, and the Age Discrimination in Employment Act, 29 U.S.C. §633a, providing for legal and injunctive relief against disability and age discrimination in federal employment.

2. The acts complained of herein took place in Hamilton County, Tennessee. Thus, venue is proper under 28 U.S.C. §1391(b)(2).

### II.  NATURE OF PROCEEDING

3. This is a proceeding for back pay and benefits due Plaintiff; for compensatory damages; for injunctive relief requiring Defendant to cease its discriminatory practices; prejudgment interest and attorney fees; and for such additional damages and costs as may be necessary to effectuate

the purposes of the Rehabilitation Act and the Age Discrimination in Employment Act, and to make Plaintiff whole.

### III. THE PARTIES

4. Plaintiff is a resident of Hamilton County, Tennessee.

5. Defendant Tennessee Valley Authority ("TVA") is an executive branch corporate agency and instrumentality of the United States of America. The head of TVA is its corporate board of directors, which is the proper party defendant to be sued pursuant to 42 U.S.C. §2000e-16(c) and 16 U.S.C. §831a. TVA conducts business and employs many individuals in Hamilton County, Tennessee.

6. As a federal agency, TVA is subject to the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, including the Act's prohibitions on disability discrimination, 29 U.S.C. §791, which provision also expressly adopts the provisions of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* TVA is also subject to the Age Discrimination in Employment Act, 29 U.S.C. §633a.

### IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

7. Plaintiff has been employed by TVA since 1985.

8. Since 1992, Plaintiff has been a non-licensed nuclear Assistant Unit Operator ("AUO"), primarily working at the Sequoyah Nuclear Plant in Hamilton County, Tennessee.

9. In May 2015, Plaintiff was selected by the union for a promotional appointment to the Sequoyah Nuclear Plant Training Center ("STC"), with the primary role of updating and revising lesson plans and course materials for the upcoming class of new AUOs.

10. At the time of his promotional appointment, Plaintiff was age 54.

11. At the same time, TVA management selected another AUO, David Smith, for a promotional appointment to the exact same position as Plaintiff's position at the STC. David Smith is 15 years younger than Plaintiff.

12. In 2016, Plaintiff developed a severe form of nonalcoholic fatty liver disease (hereinafter referred to as "disability"), which necessitated a liver transplant. As a result of his disability, Plaintiff missed several months of work. However, by early 2017, Plaintiff returned to work at the STC, although he had several disability-related restrictions.

13. In January 2017, Chris Dahlman became operations training manager in charge of the STC, and effectively Plaintiff's supervisor. At the time, Dahlman was age 40.

14. Dahlman disliked Plaintiff because of his disability and age, and frequently harassed, bullied, and discriminated against Plaintiff because of disability and age.

15. On several occasions, Dahlman made discriminatory comments to Plaintiff about his disability and age. Examples of such discriminatory comments include:

- "What are you – like 62 or 64? Isn't it time for you to retire? I would think with your disability and age that you'd want to leave TVA by now. I'm tired of dealing with your medical disabilities."

- "I've discussed your medical problems with [my supervisor]. We already have too many people with injuries and disabilities at the Training Center. We're not running a rehabilitation clinic. Your medical restraints are like a boulder in my career path and I don't intend to let that happen."

- "If you make me mad, I can make sure you go back to the plant! At your age, do you really want to be out in that hot plant in the summer when it's like 100 degrees,

3

Case 1:20-cv-00029-DCLC-CHS   Document 1   Filed 01/24/20   Page 3 of 10   PageID #: 3

trying to do all the stuff guys 20 years younger than you are doing? I don't think that would be very good for your brand new liver you just got!"

- "The Training Center is not a home for the sick and disabled and I'm tired of dealing with it!"

16. Periodically, Dahlman would press Plaintiff about retiring, asking whether Plaintiff had talked to anyone about filing for disability benefits. Plaintiff would always tell Dahlman that he did not have plans to retire and that he was not interested in filing for disability benefits.

17. Dahlman also resorted to physical intimidation, to the point that Plaintiff actually feared for his safety. For example, during one of many angry tirades, Dahlman got into Plaintiff's face. Dahlman's face was red, his voice was loud, and his muscles were tense and flexing rapidly.

18. Jeremy Bailey, who was Plaintiff's immediate supervisor and who also reported to Chris Dahlman, was also hostile to Plaintiff because of Plaintiff's disability and age. Examples of Bailey's discriminatory conduct include:

- Bailey asked Plaintiff to give him details about the nature and duration of his medical condition. He stated that Chris Dahlman and Dahlman's boss (Matt McMullen) wanted him to gather information about Plaintiff's disabilities. Bailey advised that Dahlman and McMullen felt that Plaintiff's age and disabilities would make it a problem for Plaintiff to be an effective instructor.

- Once when discussing Plaintiff's disability, Bailey recounted a story about his father rejecting Bailey's advice to quit working and file for disability benefits. Bailey explained that his father continued working, but that choice in the end turned out poorly for his father. Bailey then told Plaintiff that he and Dahlman were

concerned that the same thing might happen to Plaintiff and that Plaintiff might not be physically able to continue working.

- Bailey suggested to Plaintiff on several occasions that he should quit working and file for disability. On one occasion, when suggesting that Plaintiff file for disability, Bailey stated, "You know you're not getting any younger." Bailey then suggested that Plaintiff talk to his doctor about filing for disability. He added, "Everyone knows you're not 100%, so why don't you just file for it [disability]?"

- Bailey told Plaintiff that it looked bad for Plaintiff, as an instructor, to be walking around the training center with a cane. Bailey added that Dahlman did not like seeing him with a cane.

19. Plaintiff complained of disability and age discrimination. First, Plaintiff complained directly to Dahlman, who simply ignored Plaintiff's complaint. Second, Plaintiff complained to Bailey that Dahlman was threatening to physically harm him on the basis of his disability and age. This second complaint was escalated to Human Resources representative Megan Markum, who allegedly investigated the complaint in November 2017. The HR investigation, however, was never completed. After complaining to Markum, Plaintiff complained about Dahlman's behavior to other members of human resources and management, but nothing was ever done to correct or remedy Dahlman's discriminatory conduct.

20. In the fall of 2017, plans were begun to select instructors for the upcoming class of new AUOs, who would begin their 18-month training classes in the spring of 2018. Plaintiff and his coworker David Smith were slated to become instructors.

21. The STC normally staffs 15-20 instructors, who are divided into three groups: (1) non-licensed operations program for Nuclear Student Generating Plant Operator (NSGPO) and

5

Case 1:20-cv-00029-DCLC-CHS   Document 1   Filed 01/24/20   Page 5 of 10   PageID #: 5

Non-Licensed Operator Requalification (NLOR); (2) licensed operations program for Initial Licensed Training (ILT) and Reactor Operator Requalification; and (3) the simulator. Only Senior Reactor Operators (SROs) may be instructors in the simulator and the licensed operations program. Qualified AUOs can be instructors in the non-licensed operations program.

22. While David Smith was approved as an instructor for the non-licensed operations program, Plaintiff was disapproved allegedly because of an ethical conflict of interest. Plaintiff's son had been selected as a student in the new class of AUOs to enter the NSGPO program, and Dahlman spearheaded an effort to disqualify Plaintiff as an instructor supposedly because Plaintiff's son's status as a student would be an ethical conflict of interest.

23. Previously, instructors had not been disqualified because of their children's status as students in the various training programs. Indeed, such situations had occurred in the recent past without any issue.

24. Dahlman refused to allow Plaintiff to be assigned an instructor position in the Non-Licensed Operator Requalification (NLOR) program, even though this option was recommended by several members of the committee tasked with appointing STC instructors.

25. The alleged justification given by Dahlman for Plaintiff's ethical conflict of interest was that Plaintiff could gain access to any test material that his son might take, even if Plaintiff was assigned to the NLOR program, rather than the NSGPO program in which Plaintiff's son was a student.

26. At the same time that Plaintiff was disqualified as instructor, Dahlman permitted the appointment of Bernie Geier as an instructor in the ILT program while Geier's son participated as a student in the NSGPO program. At this time, Darrell Johnson was appointed instructor in the NLOR program while Johnson's son participated as a student in the ILT program.

27. Dahlman's justification for disqualifying Plaintiff as an instructor was merely a pretext to mask illegal disability and age discrimination. In truth, all STC instructors collaborated together, and all STC instructors had access to all program test materials – NSGPO, NLOR, ILT, and RO Requals. Thus, access to testing materials was not considered an ethical conflict of interest for any of the instructors except for Plaintiff.

28. After Plaintiff was disqualified as an instructor, he was reassigned to other tasks at the STC for a period of approximately four months.

29. Effective March 4, 2018, Plaintiff was officially demoted from his STC training role and reassigned to his old shift work as an AUO at the Sequoyah Nuclear Power plant because Plaintiff had been disqualified as an instructor. As a result of his demotion, Plaintiff's annual compensation was reduced by $27,785.

## V. CAUSES OF ACTION

Count 1: Disability Discrimination

30. Title I of the Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against a qualified individual on the basis of disability in regard to personnel actions, including promotions and demotions. 42 U.S.C. §12112(a). The standards of Title I of the ADA are incorporated by reference into the Rehabilitation Act. 29 U.S.C. §791(f).

31. Plaintiff's severe nonalcoholic fatty liver disease (hereinafter referred to as "disability") constitutes a disability as that term is defined within the ADA inasmuch as Plaintiff's disability substantially limits the normal functioning of his liver; that he had a record of disability; or in the alternative, that Plaintiff was regarded as having a disability.

7

32. TVA unlawfully discriminated against Plaintiff because of his disability in disallowing Plaintiff to become an instructor and demoting Plaintiff in violation of 29 U.S.C. §791. But for[1] Plaintiff's disability, TVA would not have demoted Plaintiff.

Count 2:  Age Discrimination

33. The ADEA prohibits an employer from discriminating against an employee on the basis of age in regard to personnel actions, including promotions and demotions. 29 U.S.C. §633a.

34. By disallowing Plaintiff to become an instructor and demoting Plaintiff based on his age, TVA violated the ADEA.

Count 3:  Retaliation

35. By disallowing Plaintiff to become an instructor and demoting Plaintiff based upon his complaints of disability and age discrimination, TVA engaged in unlawful retaliation in violation of the Rehabilitation Act and the ADEA.

## VI. EXHAUSATION OF ADMINISTRATIVE REMEDIES

36. On September 7, 2018, Plaintiff filed a formal complaint of discrimination and retaliation with TVA's Equal Opportunity Compliance (EOC) department, which complaint was assigned EO File Number TVA-2018-0032. A Final Agency Decision (FAD) was issued on November 8, 2019. Plaintiff therefore timely brings this action within 90 days of the FAD pursuant to 42 U.S.C. §2000e-16(c) and 29 C.F.R. §1614.407.

---

[1] Section 501 of "the Rehabilitation Act borrows the causation standard from the Americans with Disabilities Act of 1990. This borrowed provision of the ADA states that no person shall retaliate against an individual "*because* such individual has opposed any [discriminatory] act or practice." *Palmquist v. Shinseki*, 689 F.3d 66, 73–74 (1st Cir. 2012) (internal citations omitted) (emphasis supplied). *See also Pinkerton v. Spellings*, 529 F.3d 513, 516–17 (5th Cir. 2008) (holding that the "sole cause" standard under §504 of the Rehabilitation Act does not apply to claims brought under §501 of the Rehabilitation Act; the ADA causation standard incorporated by §501(g) governs claims brought under §501.) "But-for" causation is the standard that the Sixth Circuit applies under the ADA. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).

## VII. DAMAGES

37. As a result of the wrongful actions of TVA as described above, Plaintiff has suffered both emotionally and financially. In particular, Plaintiff experienced emotional pain and mental anguish as a result of TVA's unlawful actions described herein. In addition, Plaintiff lost and will continue to lose wages, employee benefits, and the chance at advancement within TVA because of TVA's unlawful actions. All of these damages were proximately caused by the aforementioned unlawful actions of TVA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process upon TVA and require TVA to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiff be awarded judgment for damages for lost wages and employee benefits which he has lost from the date of TVA's discriminatory actions;

c. That the Court issue an injunction requiring TVA to reinstate Plaintiff to an instructor position at the STC, or in the alternative, to award front pay in lieu thereof;

d. That Plaintiff be awarded additional compensatory damages, including damages for emotional pain and mental anguish, pursuant to 42 U.S.C. §1981a;

e. That Plaintiff be awarded attorney fees, costs, litigation expenses, and prejudgment interest, pursuant to 29 U.S.C. §794a and the Equal Access to Justice Act, 28 U.S.C. § 2412(b);

f. That Plaintiff be awarded further relief in order to make Plaintiff whole under the Rehabilitation Act and the ADEA, including any provisions that are incorporated therein; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury, pursuant to, but not limited to, 42 U.S.C. §1981a(c).

**MIKEL & HAMILL PLLC**

By: s/ *Doug S. Hamill*
      Doug S. Hamill, BPR No. 22825
      Attorney for Plaintiff
      620 Lindsay Street, Suite 200
      Chattanooga, TN 37403
      (423) 541-5400
      dhamill@mhemploymentlaw.com