UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| ROBERT BLEDSOE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:20-CV-00029-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| TENNESSEE VALLEY AUTHORITY BOARD OF DIRECTORS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant, Tennessee Valley Authority Board of Directors ("TVA"), has filed a Motion for Summary Judgment [Doc. 30], memorandum in support [Doc. 31], and statement of material facts [Doc. 32]. Plaintiff responded in opposition [Docs. 33, 34, 35] to which TVA replied [Doc. 36]. This motion is now ripe for resolution.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

TVA operates various nuclear power plants in East Tennessee, including the Sequoyah Nuclear Plant and Watts Bar Nuclear Plant [Doc. 31, pg. 2]. To run these facilities, TVA employs both licensed and non-licensed operators [Doc. 34, ¶ 1]. As the names imply, licensed operators and non-licensed operators are different. They receive different training and education [Doc. 34, ¶ 5]. This case focuses on TVA's decision to remove Bledsoe as an instructor because his son had enrolled in the class Bledsoe was scheduled to teach.

TVA requires non-licensed operators to complete the Nuclear Student Generation Plant Operating Training course ("NSGPO") and the Non-Licensed Operator Requalification courses ("NLOR"). TVA provides the instruction for those courses [Doc. 34, ¶¶ 3-4]. TVA has established

1

what it calls the Local Joint Training Subcommittee ("LJTS") to oversee training for the non-licensed operators [Doc. 34, ¶ 7]. The LJTS chooses the instructors for the two courses as well as the students who will receive the training [Doc. 31, pg. 4]. In 2017, the LJTS was comprised of Christopher Dahlman, the Operations Training Manager, David Williams, the union representative, Megan Markum, the human resources representative, and Dennis Dimopoulos or Kevin Michael, the operations management representative [Doc. 34, ¶ 20]. If ever the LJTS cannot reach a unanimous decision regarding an issue, it is referred to the Joint Training Subcommittee [Doc. 31, pg. 4].

Plaintiff Robert Bledsoe works for TVA at its Sequoyah Nuclear Plant as a non-licensed operator. In 2015, LJTS selected him to serve as a temporary instructor for the NSGPO class. However, the next year, Bledsoe missed work while recovering from a liver transplant surgery. He returned to work full-time in February 2017 [Doc. 34, ¶ 14]. When he returned to work, Bledsoe was scheduled to teach an upcoming NSGPO course [Doc. 34, ¶ 21].

To fill the courses, TVA took applications. And as part of that process, David Williams, a union representative, asked for recommendations of individuals whom the union could refer to the LJTS for consideration to be enrolled in the course [Doc. 34, ¶ 23]. In response, Bledsoe forwarded his son's resume to Williams, who sent it to the LJTS to consider [Doc. 34, ¶¶ 24-25]. While Hudson's application was under consideration, Kevin Michael, as a member of the LJTS, requested Megan Markum seek an ethics opinion regarding the conflict posed by a parent serving as an instructor of a course in which his child was a student [Doc. 34, ¶¶ 29-30; Doc. 30-16, Michael Deposition 52:17-54:11]. The LJTS faced the same scenario with another employee, Roger Brown, who was also slated to teach a course attended by his son [Doc. 30-14, pg. 3].

2

On November 20, 2017, Markum emailed the Director of Ethics and Compliance for TVA, Mrs. Janda Brown, regarding the conflict [Doc. 34, ¶ 31; Doc. 34, ¶ 31]. Brown responded that LJTS would have "to assign an [instructor] who does not have family members in the Student Generating Operating Plant class…."[1] [Doc. 30-14, pg. 2; Doc. 34, ¶ 32]. Ultimately, the LJTS accepted Bledsoe's son's application for the NSGPO course at Sequoyah Nuclear Plant, which was the same course his father was scheduled to teach [Docs. 30-13; 34, ¶ 26].

On November 27, 2017, Bledsoe met with Markum, Jerry Bailey, who was Bledsoe's immediate supervisor, and Williams, the union representative, and complained that Dahlman harassed him because of his disability and his age [Doc. 30-6, 68:8-14; Doc. 30-11, Markum deposition 69:7-72:18; Doc. 30-5, Williams deposition 60:2-18]. Three days later, the LJTS met to address the conflict posed by the two employees serving as instructors for classes attended by their children [Doc. 34, ¶ 34; Doc. 30-15, pg. 2]. The LJTS considered alternatives to resolve the conflict. Williams suggested having Bledsoe teach another course in which his son was not enrolled [Doc. 30-5, 33:21-34:20]. However, Kevin Michael noted that doing that would not remove the conflict because the instructors collaborated together [Doc. 30-16, Michael deposition 64:18-65:10]. The instructors assisted each other; they discussed their exam questions for each course, and even taught each other's courses.

Approximately two months after its initial meeting discussing the conflict, in February 2018, the LJTS voted unanimously, including the union representative, to assign different instructors to teach the courses and removed both Bledsoe and Brown from their role as instructors

---

[1] Brown based her opinion on 5 C.F.R. § 2635.502, the federal regulation that governs personal and business relationships, and TVA's "Employment of Relatives" policy [Doc. 30-19, pg. 2]. Bledsoe acknowledged that teaching the class in which his son was a student would pose a conflict of interest [Doc. 30-6, Bledsoe Deposition 134:23-135:02].

3

[Doc. 34, ¶ 35; Doc. 30-20]. Bledsoe's pay was reduced as a result [Doc. 33-6]. In Bledsoe's place, the LJTS appointed Jimmy Thomas, a 50-year-old reactor operator with Crohn's Disease [Doc. 33, pg. 12]. At the time of his demotion, Bledsoe was 58 years old.

Bledsoe claims TVA's decision to demote him was discrimination based on his disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 701-94, and based on his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* [Doc. 1, ¶ 32, 34]. He also claims TVA's demotion of him was in retaliation for his complaints of disability and age discrimination under both the Rehabilitation Act and the ADEA [Doc. 1, ¶ 35]. TVA filed a Motion for Summary Judgment [Docs. 30, 31]. It first stipulates that Bledsoe qualifies as disabled for the purposes of the Rehabilitation Act [Doc. 27]. But it argues that it "has established a legitimate, non-discriminatory reason for its action, and Mr. Bledsoe cannot establish that reason was pretext for illegal discrimination or retaliation." [Doc. 31, pg. 1]. TVA argues that it demoted Bledsoe and Brown, the other instructor who faced a similar conflict, from their instructor positions because of the conflict of interest created by their children's presence in their class. His demotion had nothing to do with either his age or disability or in retaliation for his complaint of discrimination.

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The burden of proving that no genuine dispute of fact exists is strictly upon the moving party. *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As such, the court must consider the evidence and "draw all reasonable inferences in favor of the nonmoving party." *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

However, once the moving party has presented sufficient evidence to support summary judgment, the nonmoving party "must point to evidence in the record upon which a reasonable finder of fact could find in its favor." *Machoka v. City of Collegedale*, No. 1:17-CR-203-TAV-CHS, 2019 WL 1768861, at *3 (E.D. Tenn. Apr. 22, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Specifically, the alleged factual dispute must be material. *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Bledsoe's Prima Facie Case for Disability and Age Discrimination

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020) (under the Rehabilitation Act, a plaintiff must show that "the adverse action was taken solely by reason of the disability") (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). "To make a claim for disability discrimination under the Rehabilitation Act, a plaintiff must show that []he is (1) disabled; (2) otherwise qualified to perform the essential functions of her position; and (3) suffered an adverse

5

employment action solely because of h[is] disability." *Kaminsky v. Wilkie*, No. 20-3821, 2021 WL 2018653, at *3 (6th Cir. May 20, 2021) (quoting *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

The ADEA makes "it unlawful for an employer to take adverse action against an employee 'because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009) (quoting 29 U.S.C. § 623(a)). To make a claim for age discrimination under the ADEA, a plaintiff must show that he "(1) is forty years or older (protected class); (2) suffered an adverse employment action; (3) was otherwise qualified for the position; and (4) was replaced by a substantially younger employee, or additional evidence shows that the employer was motivated by age." *Kaminsky*, 2021 WL 2018653, at *3 (quoting *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014)). Under the ADEA, a plaintiff must show that age was the "but-for" cause for the challenged adverse employment action. *Id*. (quoting *Gross*, 557 U.S. at 177-78).

A plaintiff can establish a claim of discrimination by introducing direct evidence of discrimination or by circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F. 3d 561, 572 (6th Cir. 2000), citing *Kline v. Tennessee Valley Auth.*, 128 F. 3d 337, 348 (6th Cir.1997). The paths are mutually exclusive. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

The parties do not agree on the type of evidence Plaintiff is utilizing to prove his claims of discrimination. Bledsoe claims Dahlman's discriminatory statements are direct evidence of discrimination. He asserts that Christopher Dahlman "made numerous comments in which he stated that [Bledsoe] was either too disabled or too old to perform the instructor position and that he wanted [Bledsoe] to retire because of his age and disability." [Doc. 33, pg. 10]; *see also* [Doc. 33, pgs. 3-5]. After Bledsoe complained of Dahlman's discriminatory remarks, Bledsoe claims

6

that "Bailey (his immediate supervisor) confided in [him] that Dahlman wanted to get rid of [him] because he was angry about [his] complaints to HR." [Doc. 33, pg. 11].

"Direct evidence ... does not require the fact finder to draw any inferences to reach the conclusion that unlawful discrimination was at least a motivating factor." *Gohl v. Livonia Pub. Sch.*, 836 F.3d 672, 683 (6th Cir. 2016) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 916 (6th Cir. 2013)). Determining whether a statement constitutes direct evidence of discrimination requires an evaluation based on the following factors:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse employment action].

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)). "No single factor is necessarily dispositive and courts should 'tak[e] all of the circumstances into account.'" *Smith v. Chester Cty. Bd. of Educ.*, 218 F. Supp. 3d 619, 624 (W. D. Tenn. 2016) (alteration in original) (quoting *Peters*, 285 F.3d at 478).

Bledsoe argues that Dahlman, as a member of the LJTS, was a decisionmaker in his demotion, and his discriminatory comments were made relatively close to the adverse employment action. TVA argues that Dahlman was not a decisionmaker because the demotion decision was not made by a single person, but by the LJTS. Dahlman was only one voting member of the LJTS which unanimously voted to remove Bledsoe as an instructor. He did not have sole decision-making power. Further, the decision to demote Bledsoe did not come until another member of the LJTS, Kevin Michael, raised the obvious conflict of interest issue posed by Bledsoe teaching his son. Bledsoe acknowledges that Dahlman had no role in bringing the ethics concern to TVA's Director of Ethics and Compliance. Dahlman's remarks that Bledsoe should retire because of his

7

disability or age still requires an inference to reach the conclusion that LJTS actually demoted Bledsoe because of his disability or his age. Accordingly, the Court finds that Dahlman's remarks are not direct evidence of discrimination.[2]

In the absence of direct evidence, the Court applies the *McDonnell Douglas* framework to review discrimination claims. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Under the *McDonnell Douglas* burden shifting analysis, the plaintiff must first establish a prima facie case of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). TVA "[a]ssum[es] arguendo that Mr. Bledsoe can establish a prima facie case for disability discrimination, age discrimination, and retaliation." [Doc. 31, pg. 17].[3] Accordingly, the burden then shifts to TVA to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id*. (citation omitted). Once this showing has been made, the burden of production shifts back to Bledsoe who must show that the employer's explanation was merely pretext for intentional discrimination. *Id*. (citation omitted).

---

[2] In any event, TVA argues that the debate over whether Dahlman's remarks constituted direct evidence does not matter because even assuming Dahlman's remarks constitute direct evidence of discrimination, it would have made the same decision regarding demoting Bledsoe [Doc. 36, pg. 5]. For indeed, if a plaintiff presents direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have [taken the same adverse action] . . . even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[3] For Bledsoe's Rehabilitation Act claim, the parties have agreed Bledsoe is disabled and is otherwise qualified to perform the essential functions of his instructor position. The issue is whether TVA's decision to demote Bledsoe was "solely because of [his] disability." 29 U.S.C. § 794(a). It is similar for his ADEA claim. Bledsoe is over forty, his demotion was an adverse employment action, and he was otherwise qualified for the position. Thus, the issue in his ADEA claim is whether age was the "but-for" cause of TVA's decision to demote him. *See* Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). Accordingly, the focus of both Bledsoe's disability claim and age discrimination claim is on causation.

**B. TVA's proffered reason for its demotion of Bledsoe**

Because TVA assumes Bledsoe has established a prima facie case, the burden is on TVA to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). TVA claims that it demoted Bledsoe because of the conflict of interest posed by his teaching a course in which his son was a student. Federal regulations prohibit that type of conflict. *See* 5 C.F.R. § 2635.502. With that reason, the burden shifts back to Bledsoe to show that this explanation was merely pretext for intentional discrimination. *Id.*

Bledsoe may show that TVA's stated reason is pretextual "by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 342-43 (6th Cir. 1997) (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citation and internal quotation marks omitted). Bledsoe "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Worthy v. Michigan Bell Telephone Co.*, 472 F. App'x 342, 346 (6th Cir. 2012) (citation omitted). In this case, TVA's stated reason has a basis in fact. Thus, the Court will address Bledsoe's other arguments regarding pretext.

9

### 1. Whether TVA's stated reason actually motivated its demotion of Bledsoe.

Bledsoe relies on the discriminatory comments made by Christopher Dahlman to show that TVA's stated reason did not actually motivate the decision to demote him. Bledsoe also alleges that his direct supervisor, Jeremy Bailey, also held a discriminatory and retaliatory animus towards him [Doc. 33, pg. 16].

First, supporting its decision to demote Bledsoe, the LJTS had the opinion of the TVA's Director of Ethics and Compliance who advised them that "it would be necessary for management to assign an AUO and RO who do not have family members in the Student Generating Operating Plant class." [Doc. 30-14, pg. 2]. This ruling applied both to Bledsoe and Roger Brown, the other employee scheduled to teach a class in which his child was enrolled. Moreover, Bledsoe does not claim to the contrary. He acknowledges the conflict. Second, Dahlman did not have the power to unilaterally remove Bledsoe from his instructor position. This decision was for the LJTS, and its decision had to be unanimous. The LJTS was comprised of four members, including Bledsoe's union representative. Bledsoe argues that Dahlman influenced the other members of the LJTS with his discriminatory bias. In doing so, Bledsoe invokes "cat's paw" liability, where "a biased subordinate, who lacks decision-making power, uses the formal decisionmaker [the cat or cat's paw] as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Thrash v. Miami Univ.*, 549 F. App'x 511, 522 (6th Cir. 2014). In this case, Bledsoe alleges that Dahlman manipulated the LJTS committee to demote Bledsoe to further his own discriminatory and retaliatory biases.

The Supreme Court has found, under a cat's paw theory of liability, a plaintiff must establish two elements: "(1) a biased non-decisionmaker *intended* ... to cause an adverse

10

employment action, and (2) the discriminatory action was a proximate cause of the ultimate employment action." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (emphasis in originals). Unlike in *Staub* where the burden was to show the discriminatory action was a "motivating factor" in the adverse employment action, the ADEA and the Rehabilitation Act provide for different standards of proof. Under the ADEA, Bledsoe must show that age was the but-for cause of his demotion. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009). Under the Rehabilitation Act, he must show the demotion was "solely by reason of" his disability. *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016); *see also* 29 U.S.C. § 794(a) ("[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity … conducted by any Executive agency…."). Therefore, in this case, Bledsoe would have to prove that (1) a non-decisionmaker took actions to have him demoted, due to age and disability discrimination and in retaliation; and (2) that those actions were the but-for and sole cause, respectively, of the LJTS's decision to demote him. *See Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014).

      This is where Bledsoe fails as a matter of law. Bledsoe has not presented any evidence that Dahlman intended to cause the action taken by the LJTS. He did not create the conflict. Yet it was the conflict that caused Bledsoe's demotion. He has also not presented evidence from which a reasonable jury could find that Dahlman's discriminatory statements and Bledsoe's subsequent complaint to TVA were the but-for cause, and certainly not the sole cause, of the LJTS's decision to demote him. TVA's Director of Ethics and Compliance, Janda Brown, determined under federal law that Bledsoe could not serve as the instructor for the course in which his son was a student. That was a conflict, and Bledsoe acknowledges that he could not serve as his son's course

11

instructor. Thus, the decision to remove him from that course was necessary to avoid the conflict. There is nothing to suggest the LJTS's decision to demote Bledsoe was itself improper or in any way tainted by discrimination. In fact, the LJTS demoted the other instructor as well. The conflict of interest posed by Bledsoe's family relationship was a legitimate, nondiscriminatory reason for its decision to demote him. A reasonable jury could not find that the discrimination, or complaints thereof, were the but-for or sole cause of the demotion. Bledsoe has not shown that TVA's stated reason did not actually motivate the aggrieved employment action.

### 2. Whether TVA's reason was not sufficient to demote Bledsoe.

Bledsoe also argues that instead of demoting him from an instructor position, TVA could have either "(1) transferr[ed him] to the role of NLOR instructor [or] (2) transferr[ed his] son (Hudson Bledsoe) to the NSGPO program at Watts Bar." [Doc. 33, pg. 21]. An employer is entitled to "summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.,* 580 F.3d 394, 401 (6th Cir.2009) (internal quotation marks omitted). This is called the honest-belief rule. The key inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). "[T]o rebut an employer's invocation of the rule, the plaintiff must offer some evidence of an error on the part of the employer that is too obvious to be unintentional." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014) (quoting *Seeger*, 681 at 286) (internal quotation marks omitted).

The LJTS considered the option of allowing Bledsoe to teach the NLOR course. It found that the NSGPO and NLOR courses were too intertwined to remove the appearance of a conflict of interest. The instructors of both courses were expected "to communicate with one another, to discuss exam questions with one another, to freely go in and observe other classes, [and to] teach

12

other classes." [Doc. 30-16, Michael deposition, 64:18-21]. In order to resolve the potential issues with avoiding "an unethical situation," TVA would have to expend "more people, more time, resources, things that [it does not] need to execute that program. That would be abnormal compared to how [it has] ever executed the program before." [Doc. 30-16, 66:25-67:3].

Bledsoe contests the accuracy of these statements. For example, he points out that even though instructors in both the licensed and non-licensed training programs have access to all program exams, TVA has allowed an instructor to teach the licensed training course when his son was in the NSGPO course, and vice versa. Bledsoe does not argue that he could have taught the licensed training course, because Bledsoe himself was not a licensed operator. Instead, Bledsoe argues that TVA's decision to demote him rather than reassign him was baseless.

But the issue here is "whether [TVA] made a reasonably informed and considered decision before taking an adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014) (quoting *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 285 (6th Cir.2012)). The Court finds that TVA has shown that it made a "reasonably informed and considered decision" regarding Bledsoe's demotion. *Id*. The LJTS considered alternatives to demoting Bledsoe but ultimately unanimously concluded that demotion was the best course of action under these circumstances. Even Bledsoe's union representative voted to demote Bledsoe. The union representative noted that at the time of the discussion of the ethics conflict, the list of upcoming students and their locations had already been set [Doc. 30-5, 37:1-7]. Thus, Bledsoe's son was set to start the course at the Sequoyah Plant. The Court does not find that TVA's decision to demote, rather than transfer, Bledsoe is "too obvious" so that the error is intentional. *See Loyd*, 766 F.3d at 580. Therefore, the Court finds that the conflict of interest was sufficient to justify the demotion.

Bledsoe has not shown that TVA's stated legitimate, non-discriminatory reason is pretextual for either his claims under the Rehabilitation Act or the ADEA.

**C.     Retaliation Claims**

To prove retaliation, Bledsoe must show (1) he engaged in activity protected by the relevant statute; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (ADEA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act).

Bledsoe bases his retaliation claim on his complaining about Dahlman's remarks and Bailey confiding to him that Bailey believed Dahlman wanted Bledsoe out. Bledsoe's claim here fails the causal connection element. First, the decision to demote occurred months after Bledsoe complained about Dahlman's treatment of him.

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (applying Title VII standard). Here Bledsoe complained in November but his demotion did not occur until February. Given that difference, Bledsoe would need to show "other evidence of retaliatory conduct to establish causality." *Id.* He has not done so.

Moreover, as discussed with his discrimination claims, the TVA's decision to demote him was based on legitimate, nondiscriminatory reasons. He simply could not serve as an instructor

14

for a course in which his son was a student. Bledsoe has not shown that this decision was in retaliation for his engaging in any protected activity. His retaliation claims fail as well.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED,** and this case is **DISMISSED WITH PREJUDICE**. Defendant's Motion for Continuance of Trial [Doc. 48] is **DENIED** as moot. A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge